**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ESTATE OF CHARLES LAKEY by
Personal Representative, BRENDA LAKEY,

      Plaintiff,

                                 Case No. 08-12031
v.                               Hon. Lawrence P. Zatkoff

KIA MOTORS AMERICA, INC. and
KIA MOTORS CORP.,

      Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 10, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the parties' cross-motions for summary judgment [dkts 40 & 41]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.

**II. BACKGROUND**

This unfortunate case arises out of the death of Charles Lakey ("Lakey") following injuries that he suffered in an automobile accident in Detroit, Michigan. On May 15, 2005, Lakey was a passenger in a 2006 Kia Rio driven by Eddie Lee Roberts ("Roberts"). Lakey had rented the Kia Rio from a vehicle rental company. Lakey had been driving the vehicle that morning with Roberts

as his passenger.  Lakey began to feel ill, so Roberts assumed the driving duties and proceeded toward Riverview Hospital to seek medical attention for Lakey.

On the way to the hospital, Roberts and Lakey were situated behind a car driven by Joseph Walter ("Walter").  An unknown blue car parked on the right-hand side of the street attempted to leave its parking spot by using an U-turn maneuver to head in the opposite direction.  The blue car pulled out directly in Walter's path, and Walter could not avoid striking the blue car.  The Kia Rio, driven by Roberts, then struck the back of Walter's car.  The airbags in the Kia Rio did not deploy. The parties dispute whether Lakey was wearing his seatbelt at the time of the accident.

The blue car fled the scene of the accident and was never identified.  Walter and Roberts sustained minor injuries from the impact.  Lakey, however, suffered a broken neck that resulted in his paralysis, and he died from complications of that injury approximately three months later.

Plaintiff Brenda Lakey, the decedent's wife and personal representative, originally filed this action in the Wayne County Circuit Court against Defendant Kia Motors America, Inc., the vehicle's distributor, alleging negligence and gross negligence due to design defect, failure to warn, and breach of implied warranty.  The case was removed to federal court based on diversity jurisdiction. Plaintiff filed an amended complaint adding Defendant Kia Motors Corporation, the vehicle's manufacturer, as a defendant.

This case proceeded without controversy until the discovery cut-off deadline neared. Plaintiff filed a motion to extend that date, which Defendants opposed and the Court denied. Defendants thereafter filed a motion to dismiss or to compel discovery and sought an order to compel Plaintiff to more fully respond to their interrogatory requests.  Plaintiff next filed a motion to strike Defendants' notices of non-party fault.  Finally, after Plaintiff filed her motion for summary

judgment, Defendants moved to strike the attached affidavit of Plaintiff's expert, Douglas Van Sweden, or to immediately compel his deposition.

The Court finds that resolution of these pending motions is unnecessary considering the below opinion, for if the Court operates with the inference that all motions would be decided in Plaintiff's favor (i.e., the Court will consider the expert's affidavit and not require additional responses to interrogatories), Defendants would still be entitled to summary judgment. Therefore, the motions are denied as MOOT.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. ANALYSIS

In this diversity action, the Court applies Michigan products-liability law. A *prima facie* case for products liability "consists of proof, 1) that the defendant has supplied a defective product; and 2) that this defect has caused injury to the plaintiff." *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977). The "crux of liability is 'whether the manufacturer took reasonable care in light of any reasonably foreseeable use of the product which might cause harm or injury.'" *Reeves v. Cincinnati, Inc.*, 439 N.W.2d 326, 328 (Mich. Ct. App. 1989) (quoting *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 187 (Mich. 1984)).

When, as here, the plaintiff alleges that the product in question was defective as a result of its design, there are two theories on which that plaintiff may proceed. First, the plaintiff may prove that a product was rendered defective "by the manufacturer's failure to warn potential users of dangers involving the intended uses, and foreseeable misuses, of the of the product." *Rodger v. Ford Motor Co.*, No. 275578, 2008 WL 4646140, at *2 (Mich. Ct. App. Oct 21, 2008). Second, the "more traditional" theory "'questions whether the design chosen renders the product defective, i.e. whether a risk-utility analysis favored an available safer alternative.'" *Id.* (quoting *Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325, 330 (Mich. 1995)).

## A. Failure to Warn

Plaintiff has abandoned this claim. *See* Pl.'s Resp. to Defs.' Mot. Summ J. p.11; Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. Summ. J. p.6. Accordingly, summary judgment is appropriate for Defendants on Plaintiff's failure-to-warn theory.

## B. Negligent Design

Plaintiff suggests that an alternative design of the vehicle's airbag system would have allowed the airbags to deploy and prevented the decedent's injuries. Defendants insist that the

airbags were not designed to deploy in this situation and that Plaintiff has not otherwise met the elements of a design defect claim.[1]

Michigan law applies a "pure negligence, risk-utility test" to claims of design defect. *Prentis*, 365 N.W.2d at 190–91.  In order to sustain her claim for negligent design, Plaintiff must prove "(1) that the product was not reasonably safe for its foreseeable uses when it left the control of the manufacturer; and (2) a feasible, alternative design was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to its users." *Rodger*, 2008 WL 4646140, at *3; *see also* Mich. Comp. Laws § 600.2946(2).  The Sixth Circuit applies this test as follows:

> (1) that the severity of the injury was foreseeable by the manufacturer; (2) that the likelihood of occurrence of her injury was foreseeable by the manufacturer at the time of distribution of the product; (3) that there was a reasonable alternative design available; (4) that the available alternative design was practicable; (5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by the defendant's product; and (6) that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000).

In *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372 (Mich. 1982), the Michigan Supreme Court discussed the requisite evidence necessary to state a *prima facie* case of design defect.  A plaintiff must present "data or other factual evidence concerning the magnitude of the risks involved,

---

[1]Defendants also believe that they are entitled to a presumption of non-liability because the Kia Rio's airbags were in compliance with the applicable Federal Motor Vehicle Safety standards.  *See* Mich. Comp. Laws § 600.2946(4).  Plaintiff's expert disputes that the standards apply in a "under-ride" scenario.  As Defendants' only proffered evidence of compliance is the contrary opinion of their expert, the Court draws this inference in Plaintiff's favor and does not apply the presumption.

5

the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the 'unreasonableness' of risks arising from [the alleged defect]." *Id*. at 379.[2]

The parties' experts agree that the collision that occurred was an "under-ride" collision. That is, the sudden application of the brakes caused the bumper of the Kia Rio to wedge under the bumper of the car in front of it. Defendants maintain that the airbag system was not designed to deploy in all "under-ride" circumstances and that subsequent testing indicated that the system was operating properly.

Plaintiff provides a document obtained from Defendants, presumably from the Kia Rio's user instruction manual, that corroborates Defendants' position. The document instructs readers on various situations in which the airbags may not deploy, including the "under-ride" scenario:

> Just before impact, drivers often brake heavily. Such heavy braking lowers the front portion of the vehicle causing it to "ride" under a vehicle with a higher ground clearance. *Air bags may not inflate in this "under-ride" situation because deceleration forces that are detected by sensors may be significantly altered by such "under-ride" collisions.*

Pl.'s Mot. Summ. J. Ex. 7 p.10 (emphasis added). Nothing in Plaintiff's filings, including the affidavit of her expert, suggests that the airbags should have deployed in this accident, or that they were designed to employ in this accident. In fact, Plaintiff's expert reaches the contrary conclusion: "The airbag control module determined that the deceleration forces detected by the sensors were not significant enough to deploy the airbag." Van Sweden Aff. at 14.E.

---

[2]Plaintiff disputes the applicability of *Owens,* noting that "[t]his comment is not something that is law and it was just a statement talking about Plaintiff's proofs." Even if Plaintiff is correct as to the *Owens* court's intent, it is indisputable that the passage has been widely applied in Michigan products-liability cases. *See, e.g.*, *Zettle v. Handy Mfg. Co.*, 998 F.2d 358, 361–63 (6th Cir. 2006); *Reeves*, 439 N.W.2d at 328–29.

Therefore, Plaintiff's cause of action rests solely on the premise that Defendants' intentional design choices were unreasonable as a matter of law and that a risk-utility analysis would favor Plaintiff's alternative design of the vehicle's airbag system.

Plaintiff asserts that by relocating one or more of the airbag sensors to the top of the vehicle's radiator cradle, the decedent's death would have been avoided. Specifically, Plaintiff's expert opines that:

> G. A practical and technically feasible alternative design practice was available that would have prevented the harm without significantly impairing the usefulness or desireability [sic] of the automobile to users and without creating equal or greater risk of harm to others by placing a sensor or sensors to detect an under-ride collision so that the airbag would deploy in this type of collision.
>
> H. An alternative design practice is practical and feasible by moving at least one of the two sensors in the front of the vehicle up to the top of the radiator cradle at the time that it left the manufacturer.
>
> I. This change is economically feasible for the use by the manufacturer and would not significantly compromise the production, usefulness or desireability [sic].
>
> J. If the airbag had deployed in this under-ride collision, it would have kept the decedent's head from hitting the windshield/roof header of the vehicle thereby not causing him any serious injury.

Van Sweden Aff. at 14.G–J.

Plaintiff has provided scant evidence as to the magnitude of the risks associated with the current system. She does not provide any evidence of the frequency of incidents in which Kia Rio airbags did not deploy due to the physics of an "under-ride collision." Defendants, however, knew that the airbags of the Kia would not always deploy in such situations as evidenced by the user manual exhibit. While Plaintiff does not address the severity of the possible injury from an "under-ride collision," the Court finds that advanced analysis is unnecessary, as it is common knowledge

7

that a vehicular accident has the potential to cause very serious injuries.

Even if the Court were to assume that Plaintiff adequately addressed the magnitude-of-risk factor, which remains questionable, Plaintiff fails to meet the remaining elements. Plaintiff has provided no evidence or analysis that her proffered design is feasible, cost-effective, safe, or reasonable. Rather, Plaintiff has submitted only the above affidavit, which consists of little more than a recitation of the required elements. Such a showing is clearly insufficient to fulfill the alternative design component of her *prima facie* case. *See, e.g.*, *Kraft v. Dr. Leonard's Healthcare Corp.*, No. 08-10350, 2009 WL 127763, at *6 (E.D. Mich. Jan. 16, 2009) ("The report does not adequately explain how the alternative design is superior or the manner that it materially differs from the design of the carpet. Nor has it provided any foundation for concluding that an alternative design is practical or would not significantly reduce it [sic] usefulness or desirability."); *Strauch v. Raymond Corp.*, No. 254224, 2005 WL 3556107, at *2 (Mich. Ct. App. Dec. 29, 2005) ("[A]lthough Strauch's expert testified that the injury could have been prevented with a different design, he failed to demonstrate that any of his suggested alternatives would either be safer than the original design or that they would not significantly impair the usefulness or desirability of the product. . . .").

Plaintiff cites *Greene v. Lincoln-Mercury Division of Ford Motor Co.*, No. 183986, 1997 WL 33331038 (Mich. Ct. App. Nov. 14, 1999), to suggest that her proffered evidence suffices to create a genuine issue of material fact on the adequacy of her alternative design. *Greene*, however, was an unpublished *per curiam* opinion in which the Michigan Court of Appeals held that the plaintiff had submitted sufficient evidence that the seatbelt and airbag in a leased vehicle had malfunctioned, thereby causing her significant injuries. *Id*. at *1. While that case does not specify the theory of recovery, such a claim suggests a manufacturing defect rather than a design defect. Here, the claim

is not that the airbags failed to deploy when they should have; rather, Plaintiff avers that the airbag system should have been designed so that the airbags would deploy in an "under-ride" collision. As such, the Court does not find *Greene* persuasive.

Plaintiff also maintains that she has stated a *prima facie* case because "the expert for Defendant[s] has not said the additional testing or relocation would be expensive or not feasible," and instead opined only that "additional testing would be required and the sensor would likely need to be calibrated differently." This does not assist Plaintiff, as "[t]he defendant never has the burden to prove a non-defect." *Monte v. Toyota Motor Corp.*, Nos. 220671, 220983, 2001 WL 1152901, at *3 (Mich. Ct. App. Sept. 28, 2001). Even considering the above statement, Plaintiff has not shown how costly the testing and calibration process would be, or how the alternative design would be safer, more feasible, or more reasonable than the system currently in use.

The facts of this case are similar to those in *Monte*. In that case, the plaintiff was involved in an automobile accident in which the airbags in his vehicle did not deploy. The defendants countered by arguing that the airbags were not designed to deploy in a low-speed collision such as the one the plaintiff was involved in. The Michigan Court of Appeals reversed the trial court's denial of the defendants' motion for judgment notwithstanding the verdict. The court found that:

> Defendant presented evidence that the airbag functioned as designed and manufactured respecting all applicable Federal Motor Vehicle Safety Standards relative to airbags thus establishing the absence of any inherent defect attributable to the manufacturer. Plaintiffs failed to counter this evidence. The only "defect" identified by plaintiffs is that the airbag did not deploy under circumstances that plaintiff *thought* that it should *irrespective* of how the airbag is manufactured or designed. Plaintiff's mere expectations as a consumer are not sufficient in and of themselves to sustain an action in products liability. Absent an identifiable defect, recovery in products liability does not and cannot lie.

9

*Id.* at *3. Similarly, in *Rodger*, the court found that the airbags in question were not designed to deploy in the type of accident that occurred in that case. 2008 WL 4646140, at *4. This fact, coupled with the finding that the plaintiff had not demonstrated a feasible alternative design, required the court to hold that the plaintiff had not stated a *prima facie* case of design defect. *Id.* Like *Monte* and *Rodger*, the airbags implicated here were not designed to inflate in the type of accident that occurred and Plaintiff has not adequately identified a defect.

Without any indicia that the proposed alternative design would be safer, cost effective, feasible, and/or reasonable, it is impossible for the Court to conduct a risk-utility analysis, let alone find that Plaintiff has raised a genuine issue of material fact on her alternative design. That is, Plaintiff has not provided "compelling, empirical evidence of an alternative design that is feasible." *Fisher v. Kawasaki Heavy Indus.*, 854 F. Supp. 467, 472 (E.D. Mich. 1994). Plaintiff's only proffered evidence is the unsupported and untested opinion of her expert witness. This is insufficient, because "[i]f a plaintiff may proceed with the opinion of an 'expert witness' retained specifically for that purpose, whose unsupported testimony is construed to create an 'issue of material fact' to avoid summary judgment . . . it is difficult to conceive of *any* product liability case that could not proceed to trial." *Zettle*, 998 F.2d at 360–61; *see also Gould v. Wood/Chuck Chipper Corp.*, 229 F.3d 1151, at *5 (6th Cir. 2000) (table opinion). Therefore, summary judgment is proper on this claim.

## C. Breach of Implied Warranty

Plaintiff included this claim in her amended complaint but it is unclear whether Plaintiff continues to pursue this theory, as it was not specifically argued in the briefs. Regardless, under Michigan law, a *prima facie* case for breach of implied warranty is not materially distinguishable

10

from a *prima facie* case for design defect, except when determining the liability of a non-manufacturing seller. *See Prentis*, 421 N.W.2d at 692–93. Therefore, as this claim pertains to Defendant Kia Motors Corporation, the vehicle's manufacturer, Plaintiff's implied-warranty claim fails for the same reasons as did her design-defect claim. *See Rodger*, 2008 WL 4646140, at *4.

Defendant Kia Motors America, Inc. is a seller who was not the vehicle's manufacturer. A plaintiff must then show that "[t]he seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries." Mich. Comp. Laws § 600.2947(6)(a). This statute requires a plaintiff to show that "the product was sold in a defective condition, the defect caused his injury, and the seller failed to exercise reasonable care." *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 520 (6th Cir. 2000).

As the Court has found that Plaintiff has not proven that the product was defective, and because Plaintiff has not alleged negligent conduct specific to Defendant Kia Motors America, Inc., Defendant Kia Motors America, Inc. is entitled to summary judgment on the breach-of-implied-warranty claim.

## V. CONCLUSION

Accordingly, and for the above reasons, it is HEREBY ORDERED that Plaintiff's motion for summary judgment [dkt 41] is DENIED and Defendants' motion for summary judgment [dkt 40] is GRANTED. It is FURTHER ORDERED that all other outstanding motions are DENIED as MOOT. This order disposes of all remaining claims and closes the case.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF

11

UNITED STATES DISTRICT JUDGE

Dated:  August 10, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 10, 2009.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

12